IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

CAROLYN MAY EDWARDS,              )
     Plaintiff,                          )
                                          )
           v.                               )     Civil No. 3:18-cv-615 (JAG)
                                          )
NANCY A. BERRYHILL,               )
Acting Commissioner of Social Security,  )
     Defendant.                          )

REPORT AND RECOMMENDATION

On February 24, 2015, Carolyn M. Edwards ("Plaintiff") protectively applied for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"), alleging disability from arthritis, asthma, chronic obstructive pulmonary disease ("COPD") and back and shoulder pain, with an alleged onset date of May 1, 2010. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner ("Defendant").

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that: (1) at the time of the ALJ's decision, the manner of appointment of the Acting Commissioner, ALJ and members of the Appeals Council violated the Appointments Clause of the United States Constitution, rendering their actions as officers of the United States devoid of constitutional authority; (2) the ALJ failed in her residual functional capacity ("RFC") findings to account for Plaintiff's moderate limitations in social functioning and maintaining

1

concentration, persistence and pace; and, (3) the ALJ posed an incomplete hypothetical to the vocational expert ("VE"). (Mem. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mem.") (ECF No. 16) at 6-26.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[1] For the reasons that follow, this Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 15) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 18) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I.   PROCEDURAL HISTORY

On February 24, 2015, Plaintiff filed an application for SSI, alleging disability from arthritis, asthma, COPD and back and shoulder pain, with an alleged onset date of May 1, 2010. (R. at 108, 230-37.) The SSA denied Plaintiff's application initially on September 1, 2015, and again upon reconsideration on January 4, 2016. (R. at 133, 151.) At Plaintiff's written request, the ALJ held a hearing on August 2, 2017. (R. at 33-78, 173-75.) On January 4, 2018, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because she could perform jobs existing in significant numbers in the national economy. (R. at 18-27.) On July 15, 2018, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-6.)

---

[1]      The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

## II.    STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a preponderance and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (holding that the substantial-evidence inquiry requires case-by-case consideration, with deference to the presiding ALJ's credibility determinations).  In considering the decision of the Commissioner based on the record, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

3

The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the Court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite her physical and mental limitations. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 416.920(a)(4)(v).

### III.   THE ALJ'S DECISION

On August 2, 2017, the ALJ held a hearing during which Plaintiff (represented by an attorney) testified in person and a VE testified via telephone. (R. at 33-78.) On January 4, 2018, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 18-27.)

4

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 19-27). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 24, 2015 — Plaintiff's application date. (R. at 20.) At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease ("DDD"), asthma and anxiety. (R. at 21.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (R. at 21-23.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work as defined in 20 C.F.R. § 416.967(b) with additional limitations. (R. at 23.) Specifically, the ALJ found that Plaintiff could only occasionally kneel, crouch and crawl. (R. at 23.) In the ALJ's estimation, Plaintiff could frequently climb ramps and stairs, but never climb ladders, ropes or scaffolds. (R. at 23.) The ALJ determined that Plaintiff could not tolerate even moderate exposure to mold. (R. at 23-24.) The ALJ opined that Plaintiff mentally could perform simple, routine tasks. (R. at 23.) And the ALJ determined that Plaintiff could occasionally and superficially maintain contact with co-workers and the general public. (R. at 23.)

At step four, the ALJ found that Plaintiff had no past relevant work. (R. at 26.) At step five, the ALJ determined that Plaintiff's age, education, work experience and RFC allowed her to perform jobs existing in significant numbers in the national economy, including work as a collator, marker and supply worker. (R. at 26-27.) Therefore, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 27.)

IV.    ANALYSIS

Plaintiff, fifty-one years old at the time of this Report and Recommendation, has no past relevant work. (R. at 20, 26, 37, 71-73.) She applied for SSI, alleging disability from arthritis, asthma, COPD and back and shoulder pain, with an alleged onset date of May 1, 2010. (R. at 108, 230-37.) Plaintiff appeals to this Court, contending that:  (1) at the time of the ALJ's decision, the manner of appointment of the Acting Commissioner, ALJ and members of the Appeals Council violated the Appointments Clause of the United States Constitution, rendering their actions as officers of the United States devoid of constitutional authority; (2) the ALJ failed in her RFC findings to account for Plaintiff's moderate limitations in social functioning and maintaining concentration, persistence and pace; and, (3) the ALJ posed an incomplete hypothetical to the VE. (Pl.'s Mem. at 6-26.) For the reasons set forth below, the ALJ did not err in her decision.

**A.    Plaintiff Waived Her Right to Challenge the Appointment of the ALJ, Acting Commissioner and Appeals Council Members.**

Plaintiff first argues that the ALJ's decision is void, because, when the ALJ issued her decision, the SSA had appointed the ALJ in a manner that violated the Appointments Clause of the United States Constitution. (Pl.'s Mem. at 6-9.) Specifically, Plaintiff points out that, until July 17, 2018, the SSA hired ALJs through a merit-selection process administered by the Office of Personnel Management. (Pl.'s Mem. at 7-8.) Once appointed, the SSA could remove ALJs only for good cause. (Pl.'s Mem. at 8 (citing 5 U.S.C. § 7521).) Plaintiff contends that, because the ALJ in her case served as an inferior officer of the United States, the Appointments Clause required that the ALJ be appointed by the President, a court of law or the head of a department. (Pl.'s Mem. at 8); *see also* U.S. Const. Art. II, § 2, cl. 2 ("[B]ut the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the

Courts of Law, or in the Heads of Departments."). Because the Commissioner did not directly

participate in the process of selecting and appointing Social Security ALJs until July 2018, at the

time of the ALJ's decision in Plaintiff's case, neither the President, a court of law nor the head of

a department had appointed the ALJ as required, thereby rendering the ALJ's decision

unconstitutional. (Pl.'s Mem. at 8.) Plaintiff extends her Appointments Clause argument to

include the members of the Appeals Council and all Acting Commissioners of the SSA

throughout consideration of Plaintiff's claim. (Pl.'s Mem. at 6.)

Plaintiff further argues that her failure to raise the Appointments Clause issue until now

does not constitute a waiver of that issue before this Court, because: (1) the Social Security Act

and its implementing regulations do not require issue exhaustion; (2) there is no judicially-

created issue exhaustion requirement for disability appeals; (3) plaintiffs may raise constitutional

challenges upon judicial review that are collateral to the individual issue of disability; and, (4)

the issue of whether an ALJ's appointment complies with the Constitution would prove futile if

raised at the administrative level, because raising the issue would require ALJs to decide the

constitutionality of their own appointments, which falls outside an ALJ's jurisdiction. (Pl.'s

Mem. at 9-20.) Defendant responds that, because Plaintiff failed to raise the issue at the

administrative level and no exceptions to the issue exhaustion requirement apply, Plaintiff

forfeited her right to raise the Appointments Clause issue before this Court. (Def.'s Mot. Summ.

J. & Br. in Supp. Thereof ("Def.'s Mem.") (ECF No. 18) at 10-20.)

Plaintiff's Appointments Clause argument relies primarily on the Supreme Court's 2018

decision in *Lucia v. Securities and Exchange Commission*, in which the Supreme Court held that

"'one who makes a timely challenge to the constitutional validity of the appointment of an

officer who adjudicates his case' is entitled to relief." 138 S. Ct. 2044, 2055 (2018) (quoting

*Ryder v. United States*, 515 U.S. 177, 182-83 (1995)).  Specifically, the Supreme Court held that the SEC's ALJs served as inferior officers of the United States within the meaning of the Appointments Clause, requiring that the President, a court of law or the head of a department appoint the ALJs.  *Id.* at 2053-55.  Because the Securities and Exchange Commission, as head of the relevant department, did not officially appoint the SEC's ALJs, the Supreme Court found that Lucia's timely objection to the appointment of the ALJ in his case entitled him to relief in the form of a new hearing before a different and properly appointed ALJ.  *Id.* at 2055.  By analogy, Plaintiff argues that *Lucia*'s holding extends to the Social Security context and therefore renders the ALJ's decision void.  (Pl.'s Mem. at 6-9.)  However, even assuming that Plaintiff is correct and Social Security ALJs constitute inferior officers of the United States — a far-from-settled contention — Plaintiff's argument ignores the plain text of the *Lucia* decision, which entitles a plaintiff to relief only when his or her Appointments Clause objection is "timely" raised at the administrative level.  138 S. Ct. at 2055.

Although the Fourth Circuit has yet to directly address Appointments Clause challenges in the context of Social Security appeals, this Court has found that a plaintiff waives his or her right to raise an Appointments Clause challenge on judicial review when he or she fails to raise the issue before the ALJ.  *Munford v. Berryhill*, No. 3:18-cv-443, slip op. at 6-12 (E.D. Va. Feb. 19, 2019) (same), *report and recommendation adopted*, No. 3:18-cv-443 (E.D. Va. Apr. 26, 2019), *appeal filed*, No. 19-1537 (4th Cir. May 17, 2019).  Moreover, a review of court decisions from within and beyond the Fourth Circuit reveals a growing consensus that plaintiffs who raise an Appointments Clause argument must do so at the administrative level or forfeit the argument altogether.  *See, e.g., Edwards v. Berryhill*, 2019 WL 1919167, at *4 (E.D. Va. Apr. 29, 2019) (finding that the plaintiff forfeited *Lucia* argument by failing to raise it at the administrative

level); *Shelton v. Berryhill*, 2019 WL 1330897, at *11-12 (E.D. Va. Mar. 25, 2019) (same);

*Bennett v. Berryhill*, 2019 WL 1104186, at *7-11 (E.D. Va. Feb. 15, 2019) (same), *report and recommendation adopted*, 2019 WL 1102203 (E.D. Va. Mar. 8, 2019); *Lee v. Berryhill*, No. 2:18-cv-214, slip. op. at 13-14 (E.D. Va. Dec. 20, 2018) (same); *Pearson v. Berryhill*, 2018 WL 6436092, at *3-5 (D. Kan. Dec. 7, 2018) (same); *Mann v. Berryhill*, 2018 WL 6421725, at *8 (D. Neb. Dec. 6, 2018) (same); *Britt v. Berryhill*, 2018 WL 6268211, at *2 (W.D.N.C. Nov. 30, 2018) (same); *Faulkner v. Comm'r of Soc. Sec.*, 2018 WL 6059403, at *2-3 (W.D. Tenn. Nov. 19, 2018) (same);; *Avila v. Berryhill*, 2018 WL 4770733, at *3 n.6 (C.D. Cal. Oct. 1, 2018) (same); *Williams v. Berryhill*, 2018 WL 4677785, at *2 (S.D. Miss. Sept. 28, 2018) (same); *Davidson v. Comm'r of Soc. Sec.*, 2018 WL 4680327, at *2 (M.D. Tenn. Sept. 28, 2018) (same); *Stearns v. Berryhill*, 2018 WL 4380984, at *5 (N.D. Iowa Sept. 14, 2018) (same); *see also, e.g.,* *Willis v. Comm'r of Soc. Sec.*, 2018 WL 6381066, at *3 (S.D. Ohio Dec. 6, 2018) (denying the plaintiff's motion to amend her complaint to include Appointments Clause challenge, because the plaintiff failed to raise the issue at the administrative level); *Flack v. Comm'r of Soc. Sec.*, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16, 2018) (same); *Page v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 902, 903-06 (E.D. Mich. 2018) (same).  *But see Bradshaw v. Berryhill*, 2019 WL 1510953, at *1-11 (E.D.N.C. Mar. 26, 2019) (holding that plaintiff need not raise Appointments Clause issue before the ALJ or the Appeals Council to raise it on judicial review), *appeal filed*, No. 19-1531 (4th Cir. May 17, 2019); *Probst v. Berryhill*, 2019 WL 1749135, at *7-8 (E.D.N.C. Mar. 22, 2019) (same), *appeal filed*, No. 19-1529 (4th Cir. May 17, 2019); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 419-25 (M.D. Pa. 2019) (same), *appeal filed*, No. 19-1773 (3d Cir. Apr. 17,

2019).[2]  And courts have treated plaintiffs' Appointments Clause objections similarly in other administrative contexts. *See, e.g.*, *Turner Bros., Inc. v. Conley*, 757 F. App'x 697, 700 (10th Cir. 2018) (holding that the plaintiff waived Appointments Clause challenge to Department of Labor Benefits Review Board ALJ by failing to raise challenge at administrative level); *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 677 (6th Cir. 2018) (allowing an Appointments Clause challenge, because the plaintiff at least identified the issue before the Mine Safety and Health Commission and there was reasonable uncertainty about the agency's authority to rule on the issue).

Here, Plaintiff failed to raise the Appointments Clause argument before the ALJ and her request for review to the Appeals Council mentions only that "[t]he ALJ's decision is not supported by substantial evidence." (R. at 225.)  In fact, nowhere in the record does the Court find any mention of the Appointments Clause, distinguishing this case from *Jones Brothers*, in which the plaintiff at least raised, but did not pursue, the Appointments Clause issue at the administrative level.  898 F.3d at 677.  Thus, for the same reasons set forth by this Court in *Munford*, the Court finds that Plaintiff forfeited her Appointments Clause challenge by failing to raise it before both the ALJ and the Appeals Council.

## B.      The ALJ Properly Accounted for Plaintiff's Moderate Limitations in Concentration, Persistence and Pace in Her RFC Findings.

Plaintiff argues that substantial evidence does not support the ALJ's RFC assessment. (Pl.'s Mem. at 20-25.)  Specifically, Plaintiff contends that the ALJ failed to explain why her step-three findings that Plaintiff experienced moderate limitations in social functioning and

---

[2]      On April 3, 2019, Plaintiff filed a Notice (ECF No. 20) bringing *Bizarre v. Berryhill* to the Court's attention.  The Court considered the reasoning of the *Bizarre* opinion and other cases reaching the same conclusion, and, in light of the overwhelming consensus of our sister districts and the Court's own reasoning in *Munford*, the Court finds those holdings unpersuasive.

maintaining concentration, persistence and pace did not translate into greater RFC limitations. (Pl.'s Mem. at 23-24; R. at 23.)  Defendant responds that the ALJ adequately accounted for Plaintiff's credible mental limitations and explained her reasoning, and substantial evidence supports the ALJ's decision.  (Def.'s Mem. at 24.)

After step three of the sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20 C.F.R §§ 416.920(e)-(f), 416.945(a)(1).  In analyzing a claimant's abilities, an ALJ must first assess the nature and extent of the claimant's physical and mental limitations and then determine the claimant's RFC for work activity on a regular and continuing basis.  § 416.945(b).  Generally, the claimant bears the responsibility to provide the evidence that the ALJ utilizes in making his RFC determination; however, before making a determination that a claimant does not have a disability, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary.  § 416.945(a)(3).  The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that find a basis in the claimant's credible complaints.  *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); *accord* 20 C.F.R. § 416.945(e).

Social Security ruling 96-8p instructs that the RFC "'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio*, 780 F.3d at 636 (quoting SSR 96-8p, 1996 WL 374184 (July 2, 1996), at *5).  The Ruling further explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (citing SSR 96-8p, at *7).

Under *Mascio,* if an ALJ finds at step three that the claimant has moderate limitations in maintaining concentration, persistence or pace, the ALJ must address those limitations when assessing the claimant's RFC. 780 F.3d at 638. Therefore, post-*Mascio*, reviewing courts must ensure that ALJs appropriately account for step-three findings of moderate mental limitations when formulating a claimant's RFC. *See Kearson v. Colvin*, 2016 WL 4318968, at *5-6 (E.D. Va. Aug. 12, 2016) (finding that the RFC inadequately accounted for the plaintiff's moderate limitations in maintain concentration, persistence and pace); *see also Handy v. Comm'r*, 2015 WL 9302972, at *3 n.4 (D. Md. Dec. 22, 2015) (explaining the distinction between moderate limitations and mild or no limitations). However, moderate mental limitations at step three do not automatically translate into an RFC limitation, and an ALJ may exclude moderate mental limitations from a claimant's RFC if the ALJ explains why those limitations do not affect the claimant's ability to work. *Mascio*, 780 F.3d at 638. Without such an explanation, a court must remand. *Id.*

Here, in formulating Plaintiff's RFC, the ALJ found that Plaintiff could "perform simple, routine tasks and [could] have occasional and superficial contact with coworkers and the general public." (R. at 23.) Explaining Plaintiff's mental limitations, the ALJ noted Plaintiff's anxiety but found that such anxiety did not result in "disabling functional limitations." (R. at 25.) To support this conclusion, the ALJ relied on objective medical records showing that Plaintiff could drive to her appointments and arrive on time. (R. at 25.) The ALJ cited to an August 2015 examination indicating normal mental status findings and remarking that Plaintiff "appeared to come across as worse-off than she was." (R. at 25.) The ALJ further cited to a September 2016 psychiatric evaluation recording normal mental status findings other than dysphoric mood and noting that Plaintiff's medications successfully managed her anxiety. (R. at 25.) By October

12

2016, the ALJ noted, Plaintiff reported improved anxiety, with no decrease in her ability to concentrate and normal mental status findings. (R. at 25.) Continuing through Plaintiff's treatment records, the ALJ cited to a January 2017 appointment during which Plaintiff reported "feeling better" and having a positive outlook despite her personal problems. (R. at 25.) And the ALJ observed that Plaintiff continued to exhibit improved anxiety and stable mood with medicative treatment in March 2017. (R. at 25.) Overall, the ALJ noted normal psychiatric examinations throughout Plaintiff's treatment and observed that Plaintiff had not attended therapy or counseling. (R. at 25.) Ultimately, the ALJ found that "the mental limitations in the assessed residual functional capacity reflect[ed] adequate limitation based on the claimant's anxiety." (R. at 25.)

The ALJ's explanation and corresponding restrictions in the RFC fit squarely within the parameters of *Mascio*. Unlike the ALJ in *Mascio*, the ALJ here addressed why Plaintiff's anxiety did not cause more disabling mental limitations, citing to specific evidence in the record to support her conclusions. (R. at 23); 780 F.3d at 637-38. Although the ALJ neglected to explicitly explain why her step-three findings of moderate social and mental limitations did not impact Plaintiff's RFC, the ALJ addressed why Plaintiff's only medically supported mental condition — her anxiety — resulted in no "disabling functional limitations," which bridged the logical discrepancy between the ALJ's step-three findings and Plaintiff's RFC. (R. at 25.) From the ALJ's explanation, the Court can garner that, in the ALJ's estimation, Plaintiff's moderate social and mental limitations did not affect her ability to work, which allows for meaningful review. (R. at 25.) Thus, the ALJ did not err as a matter of law.

Moreover, substantial evidence supports the ALJ's findings. (R. at 23-27.) In describing her daily activities, Plaintiff did not state any problems in concentration, persistence or pace as a

result of her mental limitations. (R. at 55-57, 59.) Plaintiff's own testimony further exhibited

her capacity to perform light tasks, such as driving, reading and understanding Social Security

forms and the newspaper, light cleaning, watching television and attending salon appointments.

(R. at 24, 39, 43-44, 47-49, 50, 61, 70-71.) As the ALJ correctly noted, the evidence of record

also revealed that Plaintiff drove herself to her appointments and arrived on time. (R. at 25,

383.) The record also indicated that during a consultative evaluation, Plaintiff "attempt[ed] to

appear worse-off than she was," which the ALJ aptly noted. (R. at 25, 383-84.) Likewise, in

March 2017, Plaintiff reported that her anxiety had improved and that medicative treatment

effectively managed her condition. (R. at 455.) The objective medical evidence also indicated

normal psychiatric findings throughout Plaintiff's treatment, with no signs of anxiety or

depression. (R. at 333, 342, 345, 349-50, 356, 415-16.) And Plaintiff's treatment providers

frequently recorded that Plaintiff appeared alert and oriented, sometimes adding that she

exhibited intact memory and logical thought processes. (R. at 334, 337, 343, 349, 351, 354, 357,

408, 462.) During her hearing testimony, Plaintiff denied seeing a counselor or therapist for her

mental conditions despite recommendations from her psychiatrist, explaining only that she did

not "[know] how to." (R. at 58.) Moreover, an in-person interview with a Social Security

representative revealed no deficits in Plaintiff's ability to read, understand, concentrate, talk,

answer or write. (R. at 252.)

  Ultimately, the ALJ adequately accounted for Plaintiff's moderate social and mental

limitations in formulating Plaintiff's RFC and sufficiently explained her conclusions, citing to

objective medical evidence from the record and Plaintiff's own testimony. Although Plaintiff

cites to evidence that might contradict the ALJ's conclusions regarding Plaintiff's mental and

social abilities, such arguments ring hollow. (Pl.'s Mem. at 22.) Substantial evidence review

does not permit the Court to reweigh the evidence. *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Instead, the Court must uphold the ALJ's findings when, as here, the ALJ offers a sufficient explanation and substantial evidence supports the limitations endorsed by the ALJ. *Id.* Accordingly, the ALJ did not err.

### C.      The ALJ Properly Based her Step-Five Conclusion on the VE's Testimony.

Plaintiff argues that the ALJ erred in relying on an incomplete hypothetical to reach her step-five determination that Plaintiff could perform jobs existing in the national economy. (Pl.'s Mem. at 25-26.) Specifically, because the ALJ's hypothetical failed to account for Plaintiff's moderate limitations in maintaining concentration, persistence or pace, Plaintiff contends that the hypothetical posed to the VE proved incomplete and thus the ALJ erred in relying on the VE's testimony in response to that hypothetical. (Pl.'s Mem. At 26.) Defendant responds that Plaintiff's argument constitutes an objection not to the ALJ's hypothetical, but rather a challenge to the RFC assessment itself, which captured all of Plaintiff's credible mental limitations. (Def.'s Mem. at 24.) Because substantial evidence supports the ALJ's RFC determination, Defendant argues that the ALJ's decision should be affirmed. (Def.'s Mem. at 24.)

### 1.      *Substantial Evidence Supports the ALJ's RFC Findings.*

By challenging the hypothetical that the ALJ posed to the VE, Plaintiff necessarily challenges the RFC. Accordingly, the Court must first determine whether the ALJ's ultimate RFC assessment accounted for all of Plaintiff's substantiated impairments.

Here, the ALJ found that Plaintiff could perform light work as defined in 20 C.F.R. § 416.967(b) with additional limitations. (R. at 23.) Specifically, the ALJ found that Plaintiff could only occasionally kneel, crouch and crawl. (R. at 23.) In the ALJ's estimation, Plaintiff could frequently climb ramps and stairs, but never climb ladders, ropes or scaffolds. (R. at 23.)

The ALJ determined that Plaintiff could not tolerate even moderate exposure to mold. (R. at 23-24.) The ALJ opined that Plaintiff mentally could perform simple, routine tasks. (R. at 23.) And the ALJ determined that Plaintiff could occasionally and superficially maintain contact with co-workers and the general public. (R. at 23.)

As required by law, the ALJ reached her RFC findings after explaining which evidence the ALJ found credible and why. *Radford*, 734 F.3d at 295. Importantly, the ALJ considered Plaintiff's own statements and testimony to formulate her RFC, weighing Plaintiff's subjective complaints against the other evidence of record in accordance with SSA guidelines. SSR 16-3p, 2016 WL 1119029, at *3-8. Specifically, the ALJ noted Plaintiff's testimony regarding pain in her buttocks and left arm due to an arthritic impingement. (R. at 23, 60.) The ALJ further noted Plaintiff's testimony regarding pain in her lower back and her use of a cane to ambulate. (R. at 23, 62-63.) The ALJ accounted for Plaintiff's testimony that she had once acted on suicidal ideations and that she sometimes still had those thoughts. (R. at 23, 64-65.) And the ALJ considered Plaintiff's representation that arthritis and asthma limited her ability to work. (R. at 23, 270.) Plaintiff also alleged that walking, sitting, bending and squatting caused constant pain. (R. at 23, 255, 264-65.) Finally, the ALJ recounted Plaintiff's testimony that she could sit for no longer than twenty to thirty minutes before needing to stand. (R. at 23, 68.)

After detailing Plaintiff's testimony, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, the ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms did not entirely comport with the medical evidence and other evidence of record, going on to explain why. (R. at 23-26.) Substantial evidence supports the ALJ's findings.

Plaintiff's treatment records indicated that Plaintiff had normal gait and ambulation, supporting the ALJ's finding that Plaintiff's back problems did not result in more extreme postural and exertional limitations. (R. at 24, 334, 337, 340, 343, 346, 349, 354, 357, 388, 408. *But see* R. at 351 (recording ambulation with a cane in November 2014)). Plaintiff also exhibited normal range of motion and strength throughout her treatment, likewise supporting the ALJ's findings regarding the minimal impact of Plaintiff's degenerative disc disease. (R. at 24, 334, 337, 340, 348-49, 357, 401. *But see* R. at 343 (recording slightly decreased range of motion in left shoulder due to pain but painless range of motion in back in July 2014), 346 (same in August 2014), 354 (same in December 2014).) Moreover, as the ALJ correctly observed, Plaintiff's asthma did not result in more extreme environmental limitations, for Plaintiff repeatedly exhibited normal respiratory or lung findings. (R. at 24, 334, 336, 339, 342, 345-46, 348, 350-51, 356, 359, 388, 391, 394, 416, 450.) And, as mentioned, Plaintiff's medical records supported the ALJ's conclusion that Plaintiff's anxiety did not result in "disabling functional limitations." (R. at 25, 334, 337, 343, 349, 351, 354, 357, 408, 458, 460, 462.)

The ALJ's RFC findings likewise agreed with the medical opinions to which the ALJ afforded great weight. Specifically, the ALJ afforded great weight to the opinions of Drs. Eapen and Tinsley. (R. at 25.) The ALJ noted that Dr. Eapen's observations were consistent with other exam findings, which the record supports. (R. at 25, 334, 337, 340, 343, 346, 349, 351, 354, 357.) The ALJ also accorded great weight to Dr. Tinsley, explaining that Dr. Tinsley's opinion proved consistent with other evidence of record, including appointment records showing normal psychiatric findings. (R. at 25, 334, 388, 391, 456.) Indeed, repeatedly normal physical and mental status findings throughout Plaintiff's treatment directly supported Dr. Eapen's and Dr.

Tinsley's opinions regarding Plaintiff's physical and mental limitations. (R. at 334, 336, 339, 342, 345-46, 348, 350-51, 356, 359, 383-84, 388, 391, 394, 416, 445, 450, 456, 462.)

The ALJ relied on the opinions of Drs. Eapen and Tinsley to formulate Plaintiff's RFC. Specifically, the ALJ adopted Dr. Eapen's findings that Plaintiff could occasionally kneel and crouch, and that Plaintiff could sit, stand and walk without limitation. (R. at 23, 379.) The ALJ also adopted Dr. Tinsley's findings that Plaintiff could perform simple, routine tasks, and she incorporated Dr. Tinsley's opinion regarding Plaintiff's social capacity, limiting Plaintiff to only occasional and superficial interaction with co-workers and the public. (R. at 23, 384-85.)

Plaintiff's own statements further undermined her subjective complaints. As the ALJ correctly noted, Plaintiff testified that she could drive, climb at least fifteen steps to her apartment, perform household chores, shower and dress herself, and attend salon and nail appointments, all of which contradicted the severe limitations that Plaintiff endorsed. (R. at 24, 39, 43-44, 47-49, 50, 61, 70-71.) During a consultative examination with Dr. Tinsley, Plaintiff also described socializing with her sisters, best friend and son, and attending church regularly, demonstrating her ability to interact at least superficially with others. (R. at 382-83.)

Ultimately, in formulating Plaintiff's RFC, the ALJ complied with the requirement that she explain the evidence that she found credible and why. The ALJ's findings also coincided with the medical opinions to which the ALJ assigned the greatest weight, the medical evidence of record and Plaintiff's own statements. Thus, the ALJ applied the correct legal standards and substantial evidence supports the RFC.

### 2.    *The ALJ's Step-Five Decision Relied on an Appropriate Hypothetical.*

Because substantial evidence supports the RFC, the Court will deem the hypothetical posed to the VE proper, so long as it accurately captured all of the limitations included in the

RFC. At the fifth step of the sequential analysis, the Commissioner must show that, considering

the claimant's age, education, work experience and RFC, the claimant could perform other work

existing in significant numbers in the national economy. 20 C.F.R. §§ 416.920(g), 416.966. The

Commissioner can carry her burden in the final step with the testimony of a VE. *Walker v.*

*Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). During an administrative hearing, the ALJ must pose

hypothetical questions to the VE that accurately represent the claimant's RFC, so that the VE can

offer testimony about any jobs existing in the national economy that the claimant could perform.

*Id.* Only when the hypothetical posed represents all of the claimant's substantiated impairments

will the testimony of the VE be "relevant or helpful." *Id.*; *see also Hines v. Barnhart*, 453 F.3d

559, 567 (4th Cir. 2006) (finding that the VE's testimony had no value, because he did not take

all of the claimant's impairments into account); *see also Mascio*, 780 F.3d at 638 (remanding

because hypothetical did not account for plaintiff's moderate limitations in concentration,

persistence and pace).

During Plaintiff's hearing, the ALJ posed several hypotheticals to the VE. (R. at 74-76.)

The ALJ's first hypothetical presented an individual with the same age, education and past work

experience as Plaintiff. (R. at 74.) The ALJ asked the VE to assume that the individual could

perform the full range of light work, except that the individual could only occasionally kneel,

crouch and crawl. (R. at 74.) The hypothetical individual could frequently climb ramps and

stairs, but never climb ladders, ropes or scaffolds. (R. at 74.) The hypothetical individual could

also handle occasional and superficial contact with co-workers and the public, but no exposure to

mold. (R. at 74.) Finally, the ALJ limited the hypothetical individual to only simple and routine

tasks. (R. at 74-75.) The ALJ asked the VE whether such an individual could perform jobs

existing in significant numbers in the national economy. (R. at 75.) The VE responded that such

an individual could perform the representative positions of collator, marker and supply worker. (R. at 75).

At step five, the ALJ relied on the VE's testimony in response to the first hypothetical to conclude that Plaintiff did not qualify as disabled, because she could perform jobs existing in significant numbers in the national economy, including work as a collator, marker and supply worker. (R. at 27.) Because substantial evidence supports the ALJ's RFC assessment, and the first hypothetical posed to the VE mirrored the RFC, the ALJ properly relied on the VE's testimony as the basis for her step-five determination that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 23, 26-27, 74-76.) Thus, the ALJ did not err.

## V.   CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 15) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 18) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge John A. Gibney, Jr. and all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure**

shall bar you from attacking on appeal the findings and conclusions accepted and adopted

by the District Judge except upon grounds of plain error.

                                                    /s/

                                        David J. Novak
                                        United States Magistrate Judge

Richmond, Virginia
Date:   June 6, 2019

21